IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROMPTU SYSTEMS CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS, LLC<br><br>Defendants. | CIVIL ACTION<br><br>2:16-cv-06516 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF PROMPTU SYSTEMS CORPORATION'S MOTION
FOR PRELIMINARY INJUNCTION AND TO DISMISS
<u>DEFENDANTS' MOTION TO STAY PENDING ARBITRATION AS MOOT</u>**

WHITE AND WILLIAMS LLP

BY: /s/ David H. Marion
David H. Marion
Frank A. Bruno
1650 Market Street | One Liberty Place,
Suite 1800 |
Philadelphia, PA 19103-7395
Phone: 215.864.6870

CARR AND FERRELL LLP
Scott R. Mosko (*pro hac vice*)
Robert J. Yorio (*pro hac vice*)
120 Constitution Drive
Menlo Park, CA 94025
Phone: 650.812.3400

*Attorneys for Plaintiff
Promptu Systems Corporation*

Dated:  March 29, 2017

**TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................................1

II. ARGUMENT ........................................................................................................................2

    A.    In Light of the Broad Exception in the LDA's Arbitration Clause, None of the Claims In The Amended Complaint Is Subject to Arbitration .......................................2

        1.  The detailed allegations of the amended complaint.....................................................2

        2.  The pervasive and broad exception to arbitration in the LDA..................................4

    B.    Given the Allegations in the Amended Complaint, the Express Exception in the Arbitration Clause Clearly Excludes the Non-Patent Claims in the Amended Complaint From Arbitration ...............................................................................................5

        1.  The clear and unambiguous language of the exception in the arbitration clause compels a finding that the non-patent claims are not subject to arbitration ...............................................................................................................7

        2.  A "merits" analysis of the asserted claims when compared to the language of the exception to the arbitration clause also compels a finding that this dispute is not subject to arbitration..........................................10

    C.    Because the Alleged Non-Patent Claims Were Expressly Excluded From Arbitration, Defendants' Efforts to Proceed With Arbitration Should Be Enjoined .............................................................................................................................13

III. CONCLUSION....................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*AT&T Mobility LLC v. Smith*
  2011 WL 5924460 (E.D. Pa., the Honorable Legrome D. Davis, October 7, 2011) ............. 7, 14

*AT&T Technologies, Inc. v. Communications Workers of America, et al.*
  475 U.S. 643, 649, 106 S.Ct. 1415 (1986) .............................................................................. 6, 13

*Battaglia v. McKendry*
  233 F.3d. 720, 727 (3d. Cir. 2000) ................................................................................................. 8

*Black, et al. v. JP Morgan Chase & Co.*
  2011 WL 3940236 *6 (W.D. Pa., August 25, 2011) ..................................................................... 11

*Bruno v. Pepperidge Farm, Inc.*
  256 F.Supp.865, 868 (E.D. Pa. 1966) ........................................................................................... 11

*CardioNet, Inc., v. Cigna Health Corporation*
  751 F.3d 165, 173 (3d Cir. 2014) ...................................................................................... 7, 11, 12

*Communication Workers of America v. Avaya, Inc.*
  693 F.3d 1295, 1303 (10th Cir. 2012) ......................................................................................... 4, 6

*E.M. Diagnostic Systems, Inc. v. Local 169, International Brotherhood of Teamsters*, et al.,
  812 F.2d 91, 95 (3d Cir. 1987) ..................................................................................................... 6, 7

*Granite Rock Company v. International Brotherhood of Teamsters*, et al.
  561 U.S. 287, 130 S.Ct. 2847, 2856, 2859, 177 L.Ed.2d 567 (2010) .......................................... 6

*Howsam v. Dean Witter Reynolds, Inc.*
  537 U.S. 79, 83 (2002) ................................................................................................................. 13

*Litton Financial Printing Division v. National Labor Relations Board, et al.,*
  501 U.S. 190, 209, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) .......................................... 7, 11, 13

*Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*
  247 F.3d 44, 55 (3d Cir. 2001) ................................................................................................. 7, 11

*Medversant Technologies, LLC v. Leverage Health Solutions, LLC*
  114 F.Supp.3d 290, 296 (E.D. Pa., July 20, 2015) ...................................................................... 9

*PaineWebber Inc., v. Hartmann*
  921 F.2d 507, 514-15 (3d. Cir. 1990) ........................................................................................... 14

*PCS 2000 LP, et al. v. Romulus Telecommunications, Inc.*, et al.
  148 F.3d 32, 35 (1st Cir. 1998) .................................................................................................... 13

*Peabody Holding Co., LLC v. United Mine Workers of America, International Union*
  665 F.3d 96, 102 (4th Cir. 2012) .................................................................................... 7

*Rent-a-Center, West, Inc. v. Jackson*
  561 U.S. 63, 69, 130 S.Ct. 2772, 2783, 177 L.Ed.2d 403 (2010)................................. 6

*State Farm Mutual Automobile Insurance Company v. Coviello*
  233 F.3d 710, 716-17 (3d. Cir. 2000) ......................................................................... 11

*State of New York, et al. v. Oneida Indian Nation of New York*
  90 F.3d 58, 62 (2d. Cir. 1996) ...................................................................................... 9

*Sterling Financial Investment Group, Inc. v. Hammer*
  393 F.3d 1223, 1225 - 26 (11th Cir. 2004) ................................................................. 13

*Trap Rock Industries, Inc. v. Local 825, International Union of Operating Engineers*, AFL-CIO
  982 F.2d 884, 888 (3d. Cir. 1992) .............................................................................. 11

*United Government Security Officers of America, International Union v. Exelon Nuclear Security, LLC*
  24 F.Supp.3d 460, 467 (E.D. Pa., June 3, 2014).......................................................... 8

*United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co.*
  522 F.3d 324, 331 (3d. Cir. 2008) ........................................................................... 6, 8

*United Steelworkers of America v. Warrior & Gulf Navigation Company*
  363 U.S. 574, 584-85, 80 S.Ct. 1347, 4. L.Ed.2d 1409 (1960) .................................... 8

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*
  489 U.S. 468, 478, 109 S.Ct.1248, 1255, 103 L.Ed.2d 488 (1989)......................... 6, 9

*Winter v. Natural Resources Defense Council, Inc., et al.,*
  555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)............................................ 13

**Statutes**

9 U.S.C. §§ 3, 4........................................................................................................... 13

**Other Authorities**

Section 4 of the Federal Arbitration Act...................................................................... 13

**I.      INTRODUCTION**

In Defendants' most recent tactic in a series of steps to delay this case, they have improperly filed an arbitration proceeding with the American Arbitration Association ("AAA"), (*see*, Docket No. 37 - Ex. 1 to Defendants' Motion to Stay) covering several claims in Promptu's Amended Complaint (Docket No. 30).  They have done this in the face of *express* language in the pertinent agreement upon which Defendants rely, which clearly excludes these claims from arbitration.

The facts in the Amended Complaint supporting each claim for relief allege a detailed orchestrated scheme by Defendants to encourage Promptu to disclose its technical and business know-how regarding its voice recognition expertise.  Indeed, the pervasive theme in the Amended Complaint is Defendants' scheme to entice disclosure of Promptu's confidential and proprietary information and then use this information without paying for it.  Part of this scheme to take Promptu's technology involved Defendants' persuading Promptu to sign the License and Development Agreement ("LDA") (Docket No. 30-1, attached as Exhibit B to Promptu's Amended Complaint).  While the LDA included an arbitration clause, it expressly excludes from arbitration the facts and claims alleged in the Amended Complaint.  Specifically, the arbitration clause expressly excepts from arbitration "*any dispute arising with respect to…* " Promptu's "*… rights in know-how and confidential or proprietary information* [ ] *including its business and technical information …*"   Simply put, that is exactly what these claims involve and hence, they are not subject to arbitration.

Promptu respectfully requests that the Court enjoin Defendants' inappropriate attempt to commence arbitration, and set this case for a scheduling conference at its earliest convenience.  Further, because Defendants' arbitration proceedings should never have been commenced, their Motion to Stay (Docket No. 36) pending arbitration should be dismissed as moot.  Indeed,

Defendants have already delayed this case over three months, and they have telegraphed (*see*, Docket No. 36-2 at p.1, ftnt. 1) their intention to further delay by writing in a recent pleading that if their efforts to delay this case through arbitration are not successful, they will improperly file a second Motion to Dismiss the now Amended Complaint on claims that they failed to challenge in their first Motion to Dismiss.

## II.    ARGUMENT

### A.    In Light of the Broad Exception in the LDA's Arbitration Clause, None of the Claims In The Amended Complaint Is Subject to Arbitration

#### 1.    The detailed allegations of the amended complaint

Promptu's Amended Complaint describes an elaborate scheme in which Defendants convinced Promptu to enter into a confidential relationship in which Defendants took multiple steps to encourage Promptu to fully disclose its technical and business know-how concerning voice recognition functionality in the cable and television area.  Contrary to their express representations, Defendants thereafter adopted Promptu's technology into their cable network system without compensating Promptu.  *See*, for example paragraphs 14 and 15 of the Amended Complaint, Docket No. 30:

> 14.   Consistent with and in furtherance of this expressed interest, Comcast commenced a plan and a course of conduct to create a confidential relationship with Promptu, which relationship was then used to persuade Promptu to fully disclose its expertise and know-how of implementing voice recognition technology into Comcast's cable network system.
>
> 15.   Comcast encouraged Promptu to disclose this above-referenced expertise and know-how based upon Comcast's representations that Promptu would be appropriately compensated if Comcast deployed voice recognition into its cable network system.

The details of how Defendants enticed Promptu into this confidential relationship, and the specific technical and business-related disclosures Defendants enticed Promptu to make, are

2

further alleged in the Amended Complaint. The Amended Complaint describes many of the specific confidential and proprietary disclosures made to Defendants and to whom they were made. *See*, *id*., for example at paragraphs 17, 20, 22, 40 and 44. The specific disclosures made to Defendants included Promptu's confidential and proprietary intellectual property position, its economic models, its cash flow analyses and its detailed revenue projections regarding the implementation of Promptu's technology into Defendants' cable network. These disclosures further included detailed technical writings and proprietary information describing how Promptu's technology could be efficiently implemented into Defendants' cable network. *See*, *id.,* for example at paragraphs 29 and 30.

The LDA became a pivotal part of Defendants' elaborate scheme to entice Promptu to disclose its confidential and proprietary technical know-how and business-related capabilities. Built into this Agreement were a series of potential payments Promptu would supposedly receive for the disclosure of its proprietary information. While the promises that lead up to the execution of the LDA were illusory, the LDA's existence and role in the scheme to entice these disclosures were real. Allegations concerning the LDA begin at paragraphs 46 to 48 in the Amended Complaint. As further alleged, the representations leading up to the execution of the LDA and its execution were crucial to Defendants' scheme. *See*, *id*., for example at paragraph 73:

> 73. Given the prior representations by Comcast that it would not implement voice recognition without adequately compensating Promptu, the parties negotiated and entered into the Agreement to address the limits, rights and obligations each would have concerning Comcast's potential deployment of voice recognition technology into its cable network system.

Moreover, one of the enticements Defendants used to further their scheme was an offer to invest in Promptu. This monetary enticement is spelled out in the LDA (Docket No. 30-1, at p. 1). The Amended Complaint incorporates each of these above-referenced factual allegations into each

3

non-patent claim for relief (Docket No. 30, paragraphs 72, 78, 81, 88 and 94).  As shown below, the broad and pervasive exception in the LDA, which excepted the broadly-defined "Intellectual Property Rights" from arbitration, requires this Court to enjoin Defendants' efforts to further delay this case by their inappropriate arbitration proceeding commenced with the AAA on March 21, 2017, one day before filing their Motion to Stay Pending Arbitration (Docket No. 36), and three months after this action was commenced.

## 2. The pervasive and broad exception to arbitration in the LDA

The express exception in the LDA arbitration clause plainly exempts the claims in the Amended Complaint from arbitrability.  Indeed, the exception could not be clearer.  And, given this exception, judicial resolution of these claims must be presumed in order to give effect to the parties' actual language demonstrating their intent to exclude these claims from arbitration. *Communication Workers of America v. Avaya, Inc.,* 693 F.3d 1295, 1303 (10th Cir. 2012).

The arbitration clause *begins with an exception* for any dispute concerning disclosure of a party's know-how and confidential or proprietary technical and business information.  It reads, in relevant part:

> With the exception of any dispute arising with respect to the enforcement of either Party's Intellectual Property Rights, either party may elect arbitration with respect to any other disputes or controversies under this Agreement by delivery of a demand for arbitration to the other Party…
> (LDA, Section 19, at p. 32)

The LDA incorporated a list of definitions.  Included in that list is the definition for "Intellectual Property Rights," which is equally broad.  It reads as follows, with the parts pertinent to this matter underlined:

> **"Intellectual Property Rights"** shall mean <u>any or all of the following and all rights in, arising out of, or associated therewith, whether arising from statute or common law</u>: (i) all United States and foreign patents and utility modes and applications therefor and all reissues, divisions re-

4

examinations, renewals, extensions, provisionals, continuations and continuations-in-part thereof, and equivalent or similar rights anywhere in the world in inventions and discoveries including without limitation invention disclosures; (ii) all trade secrets and <u>other rights in know-how and confidential or proprietary information</u> (<u>including, without limitation, specifications</u>, <u>design plans</u>, <u>project development plans</u>, consumer marketing studies <u>and other business and technical information</u>); (iii) all copyrights, copyrights registrations, mask works and applications therefor and all other rights corresponding thereto throughout the world; (iv) all industrial designs and design patents and any registrations and applications therefor throughout the world; (v) all trade names, logos, common law trademarks and service marks, trademark and service mark registrations and applications therefor and all goodwill associated therewith throughout the world; and (vi) <u>any similar, corresponding or equivalent rights to any of the foregoing throughout the world</u>. (LDA, "Intellectual Property Rights," at p. A-5)

A summary of the relevant portions of this exception to arbitration can be stated as follows: "any or all" disputes "arising out of or associated" with "rights in know-how in confidential or proprietary information, [ ] including without limitation specifications, design plans, project development plans . . . and other business or technical information . . . [and] any similar, corresponding, or equivalent rights to any of the foregoing . . ." are expressly excluded from arbitration. The only reasonable and allowable interpretation of the factual allegations and their applicability to the unambiguous exception language in the LDA requires a finding that the non-patent claims are not subject to arbitration.

    **B.**    **Given the Allegations in the Amended Complaint, the Express Exception in the Arbitration Clearly Excludes the Non-Patent Claims in the Amended Complaint From Arbitration**

The Supreme Court and the Third Circuit precedents provide a straight-forward judicial approach to resolve the issue of whether a particular exception to an arbitration provision must be interpreted to compel judicial, as opposed to arbitral, resolution of the dispute. First, dispelling any argument that the existence of an arbitration clause mandates that some unidentified arbitrator resolve the question of whether the exception in it applies, the United

States Supreme Court has unequivocally found that the Court, and not some arbitrator, makes that call. "Courts (rather than arbitrators) must evaluate the threshold question of whether the parties consented to submit a particular dispute to arbitration." *AT&T Technologies, Inc. v. Communications Workers of America, et al.,* 475 U.S. 643, 649, 106 S.Ct. 1415 (1986); *E.M. Diagnostic Systems, Inc. v. Local 169, International Brotherhood of Teamsters*, *et al.*, 812 F.2d 91, 95 (3d Cir. 1987).

Second, given the existence of the exception language in the arbitration provision, rules governing its interpretation prevent a court from presuming arbitration was intended by the parties. *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69, 130 S.Ct. 2772, 2783, 177 L.Ed.2d 403 (2010). Indeed, given the existence of the exception, the presumption is in favor of judicial resolution. *Avaya, Inc.,* 693 F.3d at 1303. As the Supreme Court has instructed, the Federal Arbitration Act does not require parties to arbitrate when they have not agreed to do so. Nor does it prevent the parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. Under such circumstances, courts must enforce these exceptions to arbitration. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478, 109 S.Ct.1248, 1255, 103 L.Ed.2d 488 (1989); *AT&T Technologies, Inc.,* 475 U.S. 643 at 648; *United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co.*, 522 F.3d 324, 331 (3d. Cir. 2008).

Thus, the initial inquiry this Court must make, using principles of contract interpretation, is whether the exception to the arbitration clause excludes the non-patent claims from arbitration. *Granite Rock Company v. International Brotherhood of Teamsters*, et al., 561 U.S. 287, 130 S.Ct. 2847, 2856, 2859, 177 L.Ed.2d 567 (2010); *Avaya, Inc.* at 693 F.3d at 1303, citing *Peabody Holding Co., LLC v. United Mine Workers of America, International Union*, 665 F.3d 96, 102

(4th Cir. 2012); *E.M. Diagnostic Systems, Inc.,* 812 F.2d at 95. If the Court so finds, this motion must be granted. *AT&T Mobility LLC v. Smith*, 2011 WL 5924460 (E.D. Pa., the Honorable Legrome D. Davis, October 7, 2011).

Even if the court were to find (as Promptu respectfully contends does not here exist) some ambiguity in the exception language, it must then analyze the merits to answer the question of whether these particular claims were intended to be subject to arbitration. *Litton Financial Printing Division v. National Labor Relations Board, et al.,* 501 U.S. 190, 209, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). In this analysis, the court looks to "the factual underpinnings of the claim rather than the legal theory alleged in the complaint" to determine if the exception in the arbitration clause should be found to exclude a particular claim from arbitration. *CardioNet, Inc., v. Cigna Health Corporation*, 751 F.3d 165, 173 (3d Cir. 2014) (citing *Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*, 247 F.3d 44, 55 (3d Cir. 2001).

As further discussed below, the initial analysis of the exception language clause requires a finding that this dispute must be resolved through the judicial process. A finding that this dispute is subject to arbitration would render the exception clause "nugatory," a conclusion prohibited by the Third Circuit. *CardioNet*, 751 F.3d at 174. Thus, the inquiry ends here. However, even if the Court proceeded to examine the merits, it would still have to conclude that this dispute must be resolved through the judicial process, not arbitration.

> 1. **The clear and unambiguous language of the exception in the arbitration clause compels a finding that the non-patent claims are not subject to arbitration**

Preliminarily, this exception to arbitration unambiguously excludes "any and all" disputes "arising out of" Promptu's "Intellectual Property Rights." Thus, the parties used the broadest language possible, clearly intending to exclude from arbitration "any" possible claim

7

concerning a dispute "arising out of" a party's confidential, proprietary technical or business know-how.  Pervasive terms that exclude certain disputes from an arbitration clause must be broadly interpreted in determining whether a particular dispute fits within this exclusion.  The Third Circuit has held that "when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction." *Battaglia v. McKendry,* 233 F.3d. 720, 727 (3d. Cir. 2000).  Consequently, where broad and explicit terms, such as "any" or "arising under," are used in the language that excludes certain disputes from arbitration, the Court must give effect to these terms and prevent such matters from going to arbitration.  *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 584-85, 80 S.Ct. 1347, 4. L.Ed.2d 1409 (1960); *United Steelworkers of America,* 522 F.3d at 332.

      The case law in this district uniformly follows these above-stated principles of construction.  In a case involving an exception to arbitration similar to the one in the LDA, Judge Pratter recently held that such broad and pervasive language must be interpreted to exclude all disputes even marginally close to this language from arbitration.  In so finding, Judge Pratter wrote: "[t]he exclusion clause at issue here is broadly worded: 'issues involving the decision to grant or deny unescorted access authorization . . . shall be resolved through the access authorization program appeal process, not through the grievance and arbitration procedure . . . .'" Indeed, breadth is precisely what is suggested by the common meaning of the words 'issues involving.'" *United Government Security Officers of America, International Union v. Exelon Nuclear Security, LLC,* 24 F.Supp.3d 460, 467 (E.D. Pa., June 3, 2014).

      Further, particularly where, as here parties have used broad and pervasive language to exclude certain disputes from arbitration, the court must enforce the will of the parties by requiring all such disputes that fall within this exception to be judicially resolved.  As Judge

Robreno recently wrote: "Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of federal courts to enforce such limitations. *State of New York, et al. v. Oneida Indian Nation of New York,* 90 F.3d 58, 62 (2d. Cir. 1996). As the Supreme Court has instructed, the [Federal Arbitration Act] does not require parties to arbitrate when they have not agreed to do so . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement . . . it simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Medversant Technologies, LLC v. Leverage Health Solutions, LLC,* 114 F.Supp.3d 290,296 (E.D. Pa., July 20, 2015), citing *Volt Information Sciences, Inc.,* 489 U.S. 468 at 478.

The LDA provided for the limited circumstances in which Defendants were permitted to use Promptu's "Intellectual Property Rights," defined broadly to include Promptu's know-how and proprietary technical and business information. The Amended Complaint includes detailed factual allegations concerning Promptu's disclosures of this know-how to Defendants and how those disclosures lead to, and were key to, the formation of the LDA. In order to protect Promptu's "Intellectual Property Rights," the LDA placed limits as to how Defendants could utilize Promptu's "Intellectual Property Rights." The Amended Complaint alleges that Defendants acted outside these limits and deployed Promptu's Intellectual Property Rights in a manner that was inconsistent with said limits. *See*, Section II.A.1., *supra*. Necessarily, this claim will require the trier of fact to determine the extent of Promptu's "Intellectual Property Rights" and then determine whether Defendants acts of deploying Promptu's "know-how" in their cable network system exceeded the limits allowed in the LDA.

The second breach of contract claim in the Amended Complaint concerns the 15-year term the parties negotiated concerning the time in which Promptu's disclosed confidential and proprietary technical and business information would remain "confidential." *See* LDA Section 23 at p. 34, entitled "Confidentiality." The subject of this 15-year protection is Promptu's "Confidential Information." "Confidential Information" is defined in the LDA to mean, "all non-public or proprietary information that one Party discloses or makes available to the other Party, including, without limitation, any such information disclosed between the Parties in the course of negotiating or performing this Agreement . . ." LDA at p. A-4. Thus, the definition of "Confidential Information" corresponds to the definition of "Intellectual Property Rights" (*i.e.,* Promptu's "know-how and confidential or proprietary information . . ." excluded from arbitration). LDA at p. A-5.

Both breach of contract claims, as well as the other non-patent claims in the Amended Complaint, are inextricably tied to, and will require an adjudication of, Promptu's "know-how and confidential or proprietary information, including [its] business and technical information," and whether that know-how was improperly used by Defendants. "Any" such dispute "arising" from these claims was expressly excluded from arbitration. LDA, Section 19, at p. 32. Because binding precedent mandates this pervasive language (*i.e.,* "any" and "arising") be broadly interpreted and presumed to exclude such disputes from arbitration, the non-patent claims in the Amended Complaint must be so excluded.

> **2.  A "merits" analysis of the asserted claims when compared to the language of the exception to the arbitration clause also compels a finding that this dispute is not subject to arbitration**

Although Defendants might contend that the Court should presume all issues in a case be arbitrated because the parties agreed to arbitration, as shown, given the express exclusion from

arbitration, the presumption is against arbitration. Even if the express exclusion were to be viewed as ambiguous (which it is not), a "merits" analysis would require the court to consider the exception language, the circumstances surrounding this language and the intent behind it. *State Farm Mutual Automobile Insurance Company v. Coviello*, 233 F.3d 710, 716-17 (3d. Cir. 2000); *Bruno v. Pepperidge Farm, Inc.*, 256 F.Supp.865, 868 (E.D. Pa. 1966). As noted above, such an analysis may be necessary where the exception language is ambiguous and where the merits of the claim are bound up with the question of its arbitrability. *Litton*, 501 U.S. at 209; *Black, et al. v. JP Morgan Chase & Co.*, 2011 WL 3940236 *6 (W.D. Pa., August 25, 2011).

Here, not only does the clear language of the exception to the LDA's arbitration clause require a conclusion that the non-patent claims are not subject to arbitration (s*ee*, Section II.B.1, above) but a "merits" analysis produces the same conclusion. Under merits analysis, the Court would focus on the factual allegations in the Amended Complaint rather than the legal causes of action asserted. That is, the facts "underpinning" the asserted claims would determine whether these claims fall within the broad exception to the arbitration language in the LDA. *CardioNet*, 751 F.3d at 176; *Medtronic AVE, Inc.*, 247 F.3d at 55.

Although Defendants apparently concede that the patent claims are not subject to arbitration, they assert that the breach of contract claims do not fall within the broad definition of "Intellectual Property Rights" in the LDA. Defendants ignore both the pervasive language of the exception clause in the LDA, and the LDA's expansive definition of "Intellectual Property Rights."

The Third Circuit has directed that the Court begin by "carefully analyzing the contractual language in the arbitration clause at issue." *Trap Rock Industries, Inc. v. Local 825, International Union of Operating Engineers*, AFL-CIO, 982 F.2d 884, 888 (3d. Cir. 1992). As shown above, the arbitration

provision includes a broadly-worded exception that eliminates from arbitration "any" dispute "arising" from Promptu's "Intellectual Property Rights."  LDA Section 19, Arbitration.  Importantly, "Intellectual Property Rights" are not limited to claims for patent, copyright or trademark infringement.  Instead such rights include "any or all…rights…arising out of, or associated [ ] with…rights in know-how, and confidential or proprietary information…including…business and technical information."  LDA at A-5.

Next, a merits analysis must focus on the factual allegations, rather than the legal causes of action. "A court looks not to the labels or legal theories attached to the claims [ ] but rather it must focus on the factual underpinnings of the claims." *CardioNet*, 751 F.3d at 173.

Consequently, the fact that the claims Defendants seek to have arbitrated are labelled as "breach of contract claims" does not determine that they should be arbitrated.  Again, as demonstrated above, the "factual underpinnings" are allegations of a scheme designed to elicit Promptu's disclosure of its confidential and proprietary know-how.  The LDA was a crucial part of this scheme.  The alleged circumstances surrounding its negotiation and execution, followed by Defendants' wrongful deployment of Promptu's technology in their cable television network, demonstrate that each non-patent claim "arises" out of Promptu's "Intellectual Property Rights" as broadly defined in the LDA.  *See* Amended Complaint, Docket No. 30, Paras. 14, 15, 17, 20, 22, 29, 30, 40, 44 and 74—discussed in detail above.

Thus, even under a "merits analysis," the facts and the exception clause language demonstrate that the parties intended for such claims to be resolved by the Court.  Hence Defendants are barred and should be enjoined from pursuing their inappropriately-filed arbitration proceedings with the AAA, and the motion for a stay should be denied at moot.

## C. Because the Alleged Non-Patent Claims Were Expressly Excluded From Arbitration, Defendants' Efforts to Proceed With Arbitration Should Be Enjoined

The standards for issuing a preliminary injunction are well established. The party seeking relief must demonstrate that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent relief; (3) the balance of equities tips in its favor; and (4) the requested relief is in the public interest. *Winter v. Natural Resources Defense Council, Inc., et al.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Indeed, this Court recently enjoined a party which commenced an arbitration under facts quite similar to the case at bar. *AT&T Mobility LLC*, 2011 WL 5924460 (E.D. Pa., Hon. Legrome Davis, October 7, 2011)

Preliminarily, it is clear this Court has the authority to enjoin Defendants from proceeding with a wrongful arbitration. *PCS 2000 LP, et al. v. Romulus Telecommunications, Inc., et al.,* 148 F.3d 32, 35 (1st Cir. 1998); see also *Sterling Financial Investment Group, Inc. v. Hammer*, 393 F.3d 1223, 1225 - 26 (11th Cir. 2004) (citing Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, in affirming a district court's order enjoining an arbitration from proceeding). As demonstrated below, Promptu satisfies each of the preliminary injunction factors.

Applying the preliminary injunction factors, first, as demonstrated above, Promptu is likely to succeed on the merits of the arbitrability issue, and there is clear authority holding that the question of arbitrability must be resolved by the Court. *See*, Section II.B.1, *supra; Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc.*, 475 U.S. at 649 and *Litton*, 501 U.S. at 208). Here, the exception to arbitration in the LDA is broadly written, and the claims that Defendants contend are subject to arbitration fall directly within that exception. *See*, Section II.B.2, *supra*.

Second, unless this arbitration is enjoined, Promptu will suffer irreparable harm. As this Court stated in the *AT& T Mobility* case, at *9, "forcing a party to arbitrate a claim it did not agree to arbitrate constitutes *per se* irreparable harm." *See, PaineWebber Inc., v. Hartmann*, 921 F.2d 507, 514-15 (3d. Cir. 1990) (finding it 'obvious that the harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction'), *overruled* on other grounds by *Howsam*, 537 U.S. at 85."

Third, the balance of the hardships tips in favor of Promptu. Clear authority holds that compelling Promptu to participate in an arbitration under these circumstances would result in irreparable harm. *AT&T Mobility LLC*, 2011 WL 5924460 at *4. In comparison, an injunction here will not harm Defendants. They have this forum in which to litigate their defenses. Further, given that Defendants concede that this Court will have to resolve at least the three patent claims, all parties will benefit from a single forum resolving all claims in this action, as opposed to the piecemeal approach they seek by their efforts to divert some of these claims to arbitration.

Fourth, as to the public interest factor, the public benefits from having this dispute resolved in a single forum. The piecemeal approach proposed by Defendants would undoubtedly cause this case to linger on the court's docket for longer than it would if a single forum adjudicated all disputes. That alone harms the public interest, and would increase the time and expense for the Court and the parties. Further, the public benefits by having one forum resolve these disputes, because they are all factually related -- with one or more of these claims adjudicated in a different forum, the possibility of inconsistent results would be increased.

Consequently, similar to the ruling in *AT&T Mobility,* Defendants should be enjoined from proceeding with AAA arbitration of only some of Plaintiff's claims (Docket No. 37 - Ex. 1 to Defendants' Motion to Stay). At the very least, this Court should dismiss or deny Defendants'

Motion for a Stay pending arbitration because the LDA makes clear that each claim in the Amended Complaint is expressly excluded from the arbitration provision in that document.

## III. CONCLUSION

For the foregoing reasons, Promptu respectfully requests that this Court find that the broad and pervasive exception language in the LDA, when applied to the alleged facts in the Amended Complaint, precludes any asserted claims therein from arbitration. Therefore, Promptu requests that this Court enjoin Defendants from pursuing their improperly-filed arbitration proceeding with the AAA, and to dismiss as moot Defendants' Motion to Stay Pending Arbitration.

Respectfully submitted,

WHITE AND WILLIAMS LLP

BY: /s/ David H. Marion
David H. Marion
Frank A. Bruno
1650 Market Street | One Liberty Place, Suite 1800 |
Philadelphia, PA 19103-7395
Phone: 215.864.6870

CARR AND FERRELL LLP
Scott R. Mosko (*pro hac vice*)
Robert J. Yorio (*pro hac vice*)
120 Constitution Drive
Menlo Park, CA 94025
Phone: 650.812.3400

*Attorneys for Plaintiff*
*Promptu Systems Corporation*

Dated: March 29, 2017