IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PROMPTU SYSTEMS CORPORATION | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMCAST CORPORATION and | : | |
| COMCAST CABLE | : | |
| COMMUNICATIONS, LLC. | : | NO. 2:16-cv-06516 |

ORDER

AND NOW, this 18th day of May 2017, it is hereby ORDERED as follows:

1. Upon consideration of Defendants' Motion to Stay Pending Arbitration (Doc. No. 36), Plaintiff's Response in Opposition (Doc. No. 44), and Defendants' Reply (Doc. No. 53), Defendants' Motion to Stay (Doc. No. 36) is GRANTED.

2. Upon consideration of Plaintiff's Motion for Preliminary Injunction and to Dismiss Defendants' Motion to Stay Pending Arbitration as Moot (Doc. No. 39) Defendants' Memorandum of Points and Authorities in Opposition (Doc. No. 43), and Plaintiff's Reply Brief (Doc. No. 49), Plaintiff's Motion (Doc. No. 39) is DENIED.

3. This matter is STAYED pending arbitration.

4. Parties shall jointly advise the Court, in writing, as to the status of arbitration on or before Thursday, June 1, 2017.

5. In light of this Court's Order staying this matter pending arbitration, Plaintiff's Motion to Disqualify Theordore Calderone from Consulting with Defendants or Their Counsel (Doc. Nos. 41 and 46) is DENIED without prejudice.

Promptu Systems Corporation ("Promptu") brings this suit against Comcast Corporation and Comcast Cable Communications, LLC, ("Comcast"), alleging patent infringement and contract claims. Comcast seeks arbitration of the non-patent claims in Promptu's complaint, and has moved to stay proceedings in this Court pending arbitration. Promptu, in opposition, has moved for preliminary injunction and to dismiss the motion to stay. The parties disagree over

whether the non-intellectual property rights claims are arbitrable, and who—an arbitrator or this Court—ought to decide. Under Delaware law, an arbitration clause that incorporates a set of arbitration rules that empowers arbitrators to decide substantive arbitrability and generally provides for arbitration of all disputes constitutes clear and unmistakable evidence of the parties' intent to refer arbitrability to the arbitrator. Such is the case here. Accordingly, this Court grants the motion to stay and denies the motion for preliminary injunction and to dismiss the motion to stay.

I. Factual Background

Promptu, which until 2006 was named AgileTV Corporation, develops voice recognition and natural language understanding technology, applicable in television and cable industries. In approximately 2001, Comcast "expressed an interest in Promptu's capability in implementing a voice recognition feature into Comcast's television cable network system." First Amended Compl. ¶ 13 (Doc. No. 30). The two companies executed a confidentiality agreement, and, following repeated confirmation by Comcast executives of their interest in deploying Promptu's technology to Comcast subscribers, Promptu disclosed its ideas, technical know-how, patents, and confidential business information to Comcast executives. Id. at ¶¶ 15–22, 25. In addition, Promptu provided Comcast with proprietary information describing the processes by which Promptu's voice recognition technology could be implemented into the Comcast system. Id. at ¶ 30. Comcast represented that it would invest $2 million in Promptu, and the parties memorialized their intent to participate in a trial deployment of Promptu technology in a non-binding memorandum of understanding and addendum. Id. at ¶ 32; Defendants' Motion to Stay, Exhibit 1 (Doc. No. 37, filed under seal). Further, at Comcast's request, Promptu installed its voice recognition technology into various locations throughout Comcast's network, to allow Comcast

executives to use and demonstrate the technology and Comcast engineers and technicians to access the technology. First Amended Compl. ¶¶ 38–40.

In 2005, Promptu and Comcast executed a License and Development Agreement ("Agreement"), under which Promptu extended Comcast the option, exercisable within two years, to deploy Promptu's technology in its cable network for payment. Defendants' Motion to Stay, Exhibit 1 (Doc. No. 37, filed under seal). Promptu also granted Comcast certain initial license rights to its technology. Id. The parties provided that the law of Delaware would government the interpretation of the Agreement. Id.

Contrary to Promptu's expectations, Comcast did not exercise the option, even though in September 2015, Comcast announced plans to deploy voice recognition technology into its cable network. First Amended Compl. ¶¶ 50–51. Promptu maintains that the technology that Comcast plans to deploy is substantially similar to the technology that Promptu had previously disclosed to Comcast. Id. at ¶ 52. In December 2016, Promptu filed this suit, alleging three claims of patent infringement, unfair competition, breach of implied-in-fact contract, breach of implied-in-law contract, unjust enrichment, and willful patent infringement. Comcast filed a motion to dismiss, arguing that Promptu's common law contract claims were barred by the express agreement between the parties. Promptu amended its complaint, asserting three claims of patent infringement, two claims of breach of the License and Development Agreement, as well as unfair competition, promissory estoppel, and unjust enrichment. Id. at ¶¶ 72–99.

Subsequently, Comcast filed an arbitration demand for the non-patent claims, invoking the arbitration clause of the Agreement. Comcast also filed the instant motion to stay proceedings in this Court pending arbitration (Doc. No. 36). Promptu filed a motion for preliminary injunction and to dismiss the motion to stay (Doc. No. 39).

II.     Legal Standard

In Delaware, arbitration "is a creature of contract" and a party "cannot be forced to arbitrate a claim absent a contractual or equitable duty to do so." Behm v. Am. Int'l. Group, Inc., 2013 WL 3981663, *5 (Del. Super. July 30, 2013) (citing NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC, 922 A.2d 417, 430 (Del. Ch. 2007)). Therefore, the contract "must reflect that the parties clearly and intentionally bargained for whether and how to arbitrate." Kuhn Constr., Inc. v. Diamond State Port Corp., 990 A.2d 393, 396 (Del. 2010). Courts should "strive to honor the reasonable expectations of the parties and ordinarily resolve any doubt as to arbitrability in favor of arbitration." Parfi Holding AB v. Mirror Image Internet, Inc., 817 A.2d 149, 155–56 (Del. 2002).

To determine whether a claim should be resolved through arbitration, the court must first determine whether substantive arbitrability is properly decided by the court or an arbitrator. W. IP Commc'ns, Inc. v. Xactly Corp., 2014 WL 3032270, at *6 (Del. Super. Ct. June 25, 2014). The issue of "who decides" is a threshold question that turns on what the parties agreed to: "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question of 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." James & Jackson, LLC v. Willie Gary, LLC, 906 A.2d 76, 79 (quoting DMS Props.-First, Inc. v. P.W. Scott Assocs., Inc., 748 A.2d 389, 391–92 (Del. 2000). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." McLaughlin v. McCann, 942 A.2d 616, 621 (Del. Ch. 2008) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

4

Where an agreement is silent as to who decides substantive arbitrability, it is presumed that the parties intended for the courts to resolve substantive arbitrability issues, absent "clear and unmistakable" evidence to the contrary. Willie Gary, 906 A.2d at 79; W. IP Commc'ns, Inc. v. Xactly Corp., 2014 WL 3032270, at *7. The Delaware Supreme Court in Willie Gary, noting that "Delaware arbitration law mirrors federal law[,]" adopted the majority federal rule requiring "clear and unmistakable" evidence of an agreement to arbitrate substantive arbitrability. Willie Gary, 906 A.2d at 79. Clear and unmistakable intent to submit substantive arbitrability issues to an arbitrator exists if an arbitration clause: "(1) "incorporates a set of arbitration rules that empower arbitrators to decide [substantive] arbitrability" and (2) "generally provides for arbitration of all disputes." Id. at 80. If the arbitration clause does not generally provide for arbitration of all disputes, "something other than the incorporation of the American Arbitration Association ("AAA") rules would be needed to establish that the parties intended to submit arbitrability questions to an arbitrator." Id. at 80–81; Brown v. T-Ink, LLC, 2007 WL 4302594, at *10 (Del. Ch. Dec. 4, 2007).

Interpreting Willie Gary, Delaware courts have concluded that "carveouts and exceptions to committing disputes to arbitration should not be so obviously broad and substantial as to overcome a heavy presumption that the parties agreed by referencing the AAA Rules and deciding to use AAA arbitration to resolve a wide range of disputes that the arbitrator, and not a court, would resolve disputes about substantive arbitrability." McLaughlin v. McCann, 942 A.2d 616, 625 (Del. Ch. 2008).

III.   Discussion

Promptu and Comcast disagree over two main issues: first, whether the claims for which Comcast has filed an arbitration demand are covered by an exception to the arbitration provision

that requires court adjudication of claims involving intellectual property rights, and thus are subject to or excluded from arbitration; and second, who—this Court or an arbitrator—should decide the first issue. Because Delaware law requires determination of the latter prior to reaching the former, W. IP Commc'ns, 2014 WL 3032270, at *6, this Court first takes up the question of who decides, and concludes that substantive arbitrability should be resolved by the arbitrator rather than this Court. Accordingly, this Court declines to reach the issue of whether the claims at issue are covered by the exception to the arbitration provision.

Analysis of whether there is "clear and unmistakable" evidence that the parties agreed to submit substantive arbitrability to the arbitrator begins with an examination of the Agreement's arbitration provision, which states, in relevant part:

> With the exception of any dispute arising with respect to the enforcement of either Party's Intellectual Property Rights, either Party may elect arbitration with respect to any other disputes or controversies under this Agreement by delivery of a demand for arbitration to the other Party (a "Demand") . . . . The location of such arbitration shall be in Wilmington, Delaware[,] or as otherwise mutually agreed upon by the Parties. Such arbitration shall be conducted by the American Arbitration Association ("AAA") and shall be initiated and conducted in accordance with the Commercial Arbitration Rules of the AAA, as such rules shall be in effect on the date of delivery of a Demand for this Agreement.

Defendants' Motion to Dismiss Exhibit D at ¶ 19(a)–(b) (filed under seal).

Here, the arbitration provision refers to Commercial Arbitration Rules of the AAA, but the parties disagree over which version of the Commercial Arbitration Rules is at issue: Comcast cites to the current rules, which took effect in 2013; Promptu maintains that the 2003 rules, which were in effect at the time the parties executed the Agreement, ought to control. In the 2013 rules, Rule 7 states, in relevant part, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." American Arbitration

Association Commercial Arbitration Rule 7 (2013). Under Delaware law, "where the arbitration clause provides that arbitration will be conducted in accordance with the rules of the American Arbitration Association (AAA), that statement constitutes clear and unmistakable evidence of the parties' intent to have an arbitrator determine substantive arbitrability." Willie Gary, 906 A.2d at 78.

Promptu maintains that the version of Rule 7 in existence at the time of contract—May 11, 2005—should govern. However, this argument is directly contradicted by the language of the Agreement's arbitration provision, which states, "arbitration shall be . . . conducted in accordance with the Commercial Arbitration Rules of the AAA, as such rules shall be in effect *on the date of delivery of a Demand* for this Agreement." Defendants' Motion to Dismiss Exhibit D at ¶ 19(a)–(b) (filed under seal) (emphasis added). Assuming arguendo that the 2003 rules applies, Rule 7 reads, merely, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." American Arbitration Association Commercial Arbitration Rule 7 (2003). In other words, the 2003 version of Rule 7 did not contain the clause, "or to the arbitrability of any claim or counterclaim[.]" According to Promptu, the absence of the clause indicates that the parties did not explicitly agree to send the issue of arbitrability to the arbitrator. Further, Promptu contends that the arbitration clause runs afoul of the second prong of the Willie Gary test because the clause contains an exception.

First, as to Promptu's urging of the application of the 2003 rules, even if those rules applied, Promptu's argument is undercut by the weight of authority at the time of contract concluding that incorporation of the AAA rules is sufficient to establish clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. See e.g., Contec Corp. v. Remote

7

Solution Co., 398 F.3d 205, 208 (2d Cir. 2005) (considering similar language and determining "when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator") (citing PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1202 (2d Cir. 1996)); Citifinancial, Inc. v. Newton, 359 F.Supp.2d 545, 549–552 (S.D.Miss. 2005) (same); Bayer CropScience, Inc. v. Limagrain Genetics Corp. Inc., 2004 WL 2931284, at *4 (N.D.Ill. Dec. 9, 2004) ("inclusion of the phrase '[t]he arbitration shall be conducted . . . in accordance with the prevailing commercial arbitration rules of the American Arbitration Association' in the arbitration provision of the Agreement is clear and unmistakable evidence that the issue of arbitrability is to be submitted to the arbitrator"); Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 203 F.R.D. 677, 685 (S.D.Fla. 2001) (same), but see Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 777 & n. 1, 780 (10th Cir. 1998).

In addition, courts that have considered the incorporation of other bodies of rules with analogous treatment of arbitrator jurisdiction have reached similar conclusions. See e.g., Shaw Grp. Inc. v. Triplefine Int'l. Corp., 322 F.3d 115, 122 (2d Cir. 2003) (incorporation of the rules of the International Court of Arbitration constituted clear and unmistakable agreement to arbitrate arbitrability); Apollo Computer, Inc. v. Berg, 886 F.2d 469, 472–73 (1st Cir. 1989) (same); FSC Secs. Corp. v. Freel, 14 F.3d 1310, 1312–13 (8th Cir. 1994) (incorporation of the National Association of Securities Dealers ("NASD") Code's jurisdictional rule was a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to the arbitrators). Therefore, the weight of authority at the time of contract suggests that reference to

the AAA rules incorporated a provision empowering an arbitrator to decide issues of arbitrability.

Next, as to the second prong of the <u>Willie Gary</u> test, Promptu argue that the arbitration clause's exception of intellectual property rights claims prevents the clause from meeting the requirement that "the arbitration clause generally provides for arbitration of all disputes." Here, the arbitration clause broadly applies to "any . . . disputes or controversies under this Agreement" and excepts from arbitration "any dispute arising with respect to the enforcement of either Party's Intellectual Property Rights," such as—as defined by the parties in the Agreement— patents, trade secrets, copyrights, industrial designs, and trademarks.

Delaware courts have repeatedly rejected Promptu's argument that, if an arbitration provision contains any exceptions, then the parties did not intend to empower the arbitrator to determine substantive arbitrability for all other contractual claims. <u>State v. Corr. Officers Ass'n of Delaware</u>, 2016 WL 6819733, at *6 (Del. Ch. Nov. 18, 2016) (citing cases). The arbitration clause at issue is similar to that in <u>W. IP Commc'ns, Inc.</u>, 2014 WL 3032270, at *7, 9. There, the arbitration clause mandates, "controversies arising from [the] Agreement" that cannot be resolved through negotiation or non-binding mediation "shall be submitted to binding arbitration before the AAA," and contains two exceptions for actions for provisional equitable relief and collection matters. <u>Id.</u> at *7. The Superior Court determined that the arbitration clause employed "broad language [that] satisfies the second requirement" of <u>Willie Gary</u>, and that the "two exceptions . . . are narrowly tailored." <u>Id.</u> at *9. Likewise, in <u>BAYPO Ltd. P'ship v. Tech. JV, LP</u>, 940 A.2d 20, 27 (Del. Ch. 2007), the Delaware Chancery Court concluded that an arbitration clause that allowed the parties recourse to courts for injunctive and equitable relief that "may be necessary to protect the rights and property of such party or maintain the status quo before,

during, or after the pendency of [arbitration]" did not provide "the same boundless and independent access to judicial relief." Id. The arbitration clause in this matter is similar to those in West IP Communications and BAYPO in that it broadly applies to any disputes under the Agreement, subject to the limited and defined exception of intellectual property rights claims, evincing the parties' intent to generally refer disputes to arbitration.

The existence of an exception in the arbitration clause at issue does not defeat this intent. Willie Gary, in discussing the requirement that the arbitration clause "generally provides for arbitration of all disputes," cited to Cong. Constr. Co. v. Geer Woods, Inc., 2005 WL 3657933, at *2–3 (D.Conn. 2005), which involves an arbitration clause that contained a material exception. Willie Gary, 906 A.2d at 80, n.9. In Congressional Construction, the arbitration clause referred to the AAA rules and excepted from arbitration claims for consequential damages. Cong. Constr. Co. v. Geer Woods, Inc., at *2–3. The Congressional Construction court concluded that there was clear and unmistakable evidence of intent to arbitrate arbitrability. Id.

Broad arbitration clauses with limited carve-outs, discussed thus far, can be contrasted with limited arbitration clauses. For instance, the arbitration clause here is distinguishable from that of Brown v. T-Ink, LLC, 2007 WL 4302594, at *10. In Brown, the arbitration clause only refers those disputes concerning the "interpretation or performance" of the parties' contract to arbitration. Id. The Brown court, in concluding that the clause failed to meet the second prong of Willie Gary, relied on the determination that the clause did not refer to arbitration "a broader set of disputes[.]" Id.

Based on these comparisons, the exception for claims involving intellectual property rights is not "so obviously broad and substantial as to overcome a heavy presumption that the parties agreed by referencing the AAA Rules and deciding to use AAA arbitration to resolve a

wide range of disputes that the arbitrator, and not a court, would resolve disputes about substantive arbitrability." See McLaughlin v. McCann, 942 A.2d 616, 625 (Del. Ch. 2008). Therefore, the issue of substantive arbitrability in this case is properly determined by an arbitrator, rather than this Court.

IV. Conclusion

Based on the foregoing discussion, this Court grants the motion to stay and denies the motion for preliminary injunction and to dismiss the motion to stay.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.