**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

PROMPTU SYSTEMS CORPORATION,

Plaintiff,

v.

COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS, LLC,

Defendants.

CIVIL ACTION

No. 2:16-CV-06516-JS

**PRETRIAL MEMORANDUM OF PLAINTIFF PROMPTU SYSTEMS CORPORATION**

**TABLE OF CONTENTS**

I. Factual Summary of the Case ....................................................................................1

A. Promptu's Mission and Its Technology ....................................................................2

1. U.S. Patent No. 7,047,196....................................................................3

2. U.S. Patent No. 7,260,538....................................................................4

B. Promptu's Relationship with Comcast.......................................................................5

C. Comcast's Development of the X1 Voice Remote ....................................................6

D. Comcast's X1 Voice Remote Infringes Promptu's Patents ........................................7

II. Promptu's Claims.............................................................................................................8

III. Promptu's Relief Sought....................................................................................................8

IV. List of Witnesses..............................................................................................................9

V. List of Exhibits.................................................................................................................9

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Plaintiff's Witness List |
| 2 | Joint Trial Exhibit List (as of 12/29/2025) |

## I. Factual Summary of the Case

Promptu Systems Corporation pioneered the technology for voice-activated television remote controls to search for and access video content over a television network. Rather than performing speech recognition locally on a user's device, Promptu's system sent a user's voice command to a remotely located server for speech processing and returned the requested content or a command to control a device in the user's home. In the early 2000s, that was no small feat, as cable television set-top boxes had limited processing power and cable television networks had limited ability to send data, let alone speech data, upstream to a remote server. Despite the constraints of this technological environment, Promptu was able to overcome problems nobody else had solved, and its innovations resulted in several patents, including the two at issue in this case. Today, this technology is commonplace with services like Apple's Siri, Amazon's Alexa, and Comcast's X1 Voice Remote. These services perform speech recognition in the cloud to deliver content or to control a user's device.

In the early 2000s, Promptu taught Comcast how to implement this technology within a cable network. Comcast [REDACTED] and together they deployed Promptu's voice-activated remote control, which embodied the patents asserted here, in Comcast's cable network. As one example of Comcast's praise of Promptu's innovations, Comcast's CEO, Mr. Brian Roberts, featured Promptu's voice-activated remote control on CNBC's *Kudlow & Cramer* show in 2004 and called it exciting. Shortly thereafter, however, Comcast decided to shift its focus, temporarily shelve the technology, and not deploy a voice remote. Nearly a decade later, Comcast released its X1 Voice Remote, but without a license from Promptu.

### A. Promptu's Mission and Its Technology

Promptu was founded in 2000 to develop technologies allowing users to quickly find and access video content over cable television networks using their voice. Then-existing technologies required complex, costly systems close to the user. There was a need for a network-based speech processing system that could service voice commands from multiple users. Though there had been extensive research into the mechanics of speech recognition, this research did not reveal how to implement speech recognition efficiently over a shared network such as a cable television network. At the time, no system provided speech recognition to a collection of users over a cable television network.

This problem was challenging to solve for many reasons, but one significant obstacle was determining how to design, deploy, and connect the components that accepted user speech, processed it, and responded to it so that it could serve multiple cable-network users. These challenges were illustrated by BBN, a company that, in the mid-1990s, proposed using its speech-recognition technology in a Time Warner cable television network known as the Full Service Network or "FSN." BBN demonstrated local, stand-alone speech control of a VCR and cable box. But despite every FSN subscriber having a set-top box containing a high-powered computer in their home, BBN never deployed a multi-user speech recognition system for FSN. The FSN-BBN project fizzled, then was cancelled by Time Warner. It would take nearly three decades for Time Warner Cable (now Charter Communications) to implement voice control in its network.

Promptu is a small, privately funded company. Given the nature of the cable industry, Promptu's business model required significant investments in engineering resources to design a product that would solve these, and other, problems for the large cable network operators. Promptu therefore relied on the patent system to protect its investments in research and development. By

2005, Promptu's patent portfolio had about twenty pending patent applications, including the two at issue in this trial, and reflected millions of dollars in investments.

### 1. U.S. Patent No. 7,047,196

The '196 patent stems from Promptu's earliest patent filing and describes an architecture for performing speech processing within a cable network. The '196 patent discloses performing speech recognition in a network that delivers video to multiple users. Prior attempts had contemplated speech recognition at each user site, such as depicted below:




Rather than performing costly speech recognition processing at each user site (as shown above), the patented invention implements it over a network. Speech processing is applied at a "speech recognition system" located remotely from multiple users' premises. The illustration shown below, based on Figure 3 of the '196 patent, depicts this architecture:




Speech data travels from each user over a network to a speech recognition system that processes each user's request, formulates a response, and returns that response over a network to the respective user. This allows the user to search for programming and content with their voice rather than pressing buttons on a remote control.

**2. U.S. Patent No. 7,260,538**

The '538 patent, like the '196 patent, concerns remote speech recognition processing. The '538 patent, however, is focused on controlling a user's device based on speech processing performed at a remote location. The '538 patent describes a system that uses a microphone activated by a "push-to-talk" button on a remote control to capture a voice command, send it to a set-top box, transmit it over a network for speech recognition processing, generate an appropriate command, and transmit the command back over the network to the set-top box for performance. The illustration shown below depicts the architecture discussed above side by side with Figure 1 from the '538 patent:




’538 Patent, Fig. 1

**B. Promptu’s Relationship with Comcast**

Around 2001, Comcast expressed interest in Promptu’s capability of integrating a speech recognition system into Comcast’s cable network. The parties entered into a series of confidentiality agreements while Comcast performed diligence on Promptu’s technology. In 2003,



”

In a presentation dating from February 2005,



In 2005, the parties executed two other agreements. The first was a License and Development Agreement. It provided Comcast a limited license to Promptu's patent portfolio, including the '196 and '538 patents, for purposes of Comcast's internal testing and trials. Prior to entering into this agreement, Comcast had performed diligence on Promptu's patent portfolio. The second was a Marketing Trial Agreement. It allowed Comcast to conduct field trials of Promptu's voice-activated remote control and speech processing system, which practiced the '196 and '538 patents. Promptu successfully deployed its network-based speech recognition system within Comcast's network in Willow Grove, Pennsylvania, as well as other locations. Comcast later decided not to pursue voice recognition at that time.

**C. Comcast's Development of the X1 Voice Remote**

Over the intervening years, Comcast continued to follow Promptu and repeatedly came back to Promptu. For example, Comcast admits it was aware of Promptu's '196 and '538 patents by December 2011. And around that time, citing the widespread popularity of voice control such as Apple's Siri, Comcast had a renewed interest in voice technology and reached out to Promptu

again. According to Comcast, this is when the development of its X1 Voice Remote began with a team led by Mr. Rick Rioboli. In April 2012, Promptu demonstrated its technology to Comcast's engineers, [redacted]. After that demonstration, Comcast [redacted]

Comcast told Promptu that the 2012 demonstration was interesting and in line with its work and vision. Promptu reminded Comcast that Promptu had patents that were relevant. Mr. Rioboli testified [redacted]. In December 2012, Comcast's CTO, Mr. Tony Werner, [redacted]. Throughout the development of Comcast's X1 Voice Remote, Comcast knew of and retained possession of Promptu's remote from the 2005 trials. Comcast released its X1 Voice Remote in May 2015 without ever requesting, let alone obtaining, a patent license from Promptu.

**D. Comcast's X1 Voice Remote Infringes Promptu's Patents**

In all relevant respects, Comcast's X1 Voice Remote is strikingly similar to Promptu's earlier, successful product and like that earlier product, it falls squarely within the asserted claims of the '196 and '538 patents, as Promptu's experts Dr. David Anderson and Dr. Michael Mitzenmacher will explain. Comcast's X1 Voice Remote uses a "push-to-talk" button that, when held, activates a microphone in the remote to record a user's spoken utterance and send data representing that speech to the user's set-top box. From there, the set-top box sends the user's speech data over an identified path to a remote server. This remote server receives speech data

from multiple users simultaneously. The remote server processes each user's speech data to interpret each user's command. If a user's command requests content, then content is delivered to that user's set-top box. If a user's command requires a command to be sent to that user's set-top box to fulfill the user's request, then a command is sent to that user's set-top box. Because Comcast's unlicensed X1 Voice Remote practices Promptu's '196 and '538 patents, Promptu filed this patent infringement case in December 2016. As will be explained by, Dr. Mitzenmacher, Comcast directly infringes Promptu's patents by Comcast's own actions, and Comcast indirectly infringes Promptu's patents by actions performed by Comcast's customers at Comcast's encouragement and instruction.

## II. Promptu's Claims

As stated in Promptu's Amended Complaint (ECF No. 30), Promptu contends the following claims should be tried to the jury:

1. Comcast has directly and indirectly infringed one or more claims of the '196 patent;
2. Comcast has directly and indirectly infringed one or more claims of the '538 patent; and
3. Comcast's infringement of these patents has been willful and in reckless disregard of Promptu's patents.

## III. Promptu's Relief Sought

Under the Patent Act, Promptu is entitled to "damages adequate to compensate [Promptu] for the infringement" by Comcast, which shall be "in no event less than a reasonable royalty for the use made of the invention by [Comcast], together with interest and costs as fixed by the court." 35 U.S.C. § 284. For the reasons detailed and to be explained to the jury by Promptu's financial

expert, Mr. James Malackowski, it is his opinion that in a hypothetical negotiation in 2015 (just prior to Comcast's infringing conduct), the parties would have agreed to [REDACTED] per subscriber, per month, for the duration of Comcast's infringing conduct spanning from 2015 through the last expiration of the two asserted patents (the '538 patent), which is December 26, 2024 (plus prejudgment interest). The precise amount of reasonable royalty damages will be quantified by the jury.

**IV. List of Witnesses**

Promptu may call to testify at trial in its case-in-chief and rebuttal case the fact and expert witnesses listed in Exhibit 1.

**V. List of Exhibits**

The parties' current Joint Exhibit List is attached as Exhibit 2. Both parties continue to narrow and refine their proposed exhibits. Given the number of total exhibits, Promptu submits that it would be most efficient to make the full exhibit set available electronically, with hard copies provided to the witnesses and the Court in advance of a witness's testimony, as needed. Comcast has thus far rejected these proposals.

Dated: December 29, 2025

Respectfully submitted,

/s/ *David V. Dzara*
David V. Dzara, Esquire
Brett A. Datto, Esquire
WEIR LLP
PA Attorney ID Nos. 91274/59493
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
(215) 665-8181

Gerald F. Ivey (*pro hac vice*)
John M. Williamson (*pro hac vice*)
Jeffrey C. Totten (*pro hac vice*)
J. Michael Jakes (*pro hac vice*)
Christopher T. Blackford (*pro hac vice*)
Jason Romrell (*pro hac vice*)
Daniel F. Klodowski (*pro hac vice*)
Sydney Kestle (*pro hac vice*)
Cara Regan (*pro hac vice*)
Amy Fulton (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000
gerald.ivey@finnegan.com
john.williamson@finnegan.com
jeffrey.totten@finnegan.com
mike.jakes@finnegan.com
christopher.blackford@finnegan.com
jason.romrell@finnegan.com
daniel.klodowski@finnegan.com
sydney.kestle@finnegan.com
cara.regan@finnegan.com
amy.fulton@finnegan.com

Benjamin R. Schlesinger (*pro hac vice*)
Robert K. High (*pro hac vice*)
Megan Meyers (*pro hac vice*)
Wyatt L. Bazrod (*pro hac vice*)
David Lebby (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
271 17th Street, NW
Suite 1400

Atlanta, GA 30363-6209
(404) 653-6400
benjamin.schlesinger@finnegan.com
robert.high@finnegan.com
megan.meyers@finnegan.com
wyatt.bazrod@finnegan.com
david.lebby@finnegan.com

Jacob Schroeder (*pro hac vice*)
Jinwoo Kim (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
(650) 849-6600
jacob.schroeder@finnegan.com
jinwoo.kim@finnegan.com

*Attorneys for Plaintiff*
*Promptu Systems Corporation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record are being served with a copy of this document, which was filed electronically, via the Court's ECF system on this 29th day of December, 2025.

*/s/ David V. Dzara*
David V. Dzara, Esquire