IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PROMPTU SYSTEMS CORPORATION | : | CIVIL ACTION |
| | : | |
| v. | : | No. 16-6516 |
| | : | |
| COMCAST CORPORATION, et al. | : | |

# MEMORANDUM

**Judge Juan R. Sánchez** **August 3, 2026**

Defendants Comcast Corporation and Comcast Cable Communications, LLC (collectively, "Comcast") move to compel production of 225 documents Plaintiff Promptu Systems Corporation withheld as protected by the attorney-client privilege. All of the withheld documents relate to the Glenn Patent Group report (the "GPG report"), a report prepared by Promptu's outside patent prosecution counsel summarizing the results of counsel's "prior art search for all issued or laid open US patent applications that [Promptu's] Speech Recognition control system might infringe." Defs.' Ex. 14.[1] Promptu prepared the report at Comcast's request and provided the final report to Comcast in April 2004, ECF No. 221 at 2; however, it has withheld drafts of the report and a small number of emails regarding it (collectively, the "GPG materials") on privilege grounds.

Comcast argues the Court should order production of the withheld documents because Promptu's revised privilege log[2] fails to adequately substantiate its claim of privilege as to most of them, Promptu has waived the privilege by advancing an advice-of-counsel defense to Comcast's inequitable conduct counterclaim, and disclosure is warranted under the crime-fraud

[1] Citations in the form "Ex. __" are to the sequentially numbered exhibits to the motion to compel and the additional briefs in support of and in opposition to the motion.

[2] Promptu served a revised privilege log in November 2025 after this Court directed it to identify the documents included in its original privilege log "that are drafts of the [Glenn Patent Group] Reports or communications attaching or discussing them." ECF No. 448 at 1.

exception to the privilege. Promptu disputes each of these contentions and additionally argues the motion to compel should be denied because the withheld documents are not relevant to the inequitable conduct counterclaim. For the reasons set forth below, the motion will be denied, except that the Court will direct Promptu to provide Comcast with additional information about the actual recipients of the drafts of the GPG report if such information is available.

**A. Relevance**

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In the discovery context, relevance is "liberally construed to 'encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Mammen v. Thomas Jefferson Univ.*, No. 20-127, 2021 WL 3782950, at *3 (E.D. Pa. Aug. 26, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("Relevancy for the purposes of Rule 26 is broadly construed."). As the party seeking to compel discovery, Comcast "bears the initial burden of proving that the information sought is relevant." *A.J. v. Mastery Charter High Sch.*, No. 22-2900, 2023 WL 6804576, at *6 (3d Cir. Sep. 20, 2023) (citation omitted).[3]

[3] The Federal Circuit applies "the law of the circuit in which the district court sits with respect to nonpatent issues," but applies its "own law to issues of substantive patent law." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000). Procedural issues that are not themselves substantive law issues are "nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to [the Federal Circuit's] exclusive [jurisdiction] by statute, or if it clearly implicates the [Federal Circuit's] jurisprudential responsibilities . . . in a field within its exclusive jurisdiction." *Id.* (second alteration in original) (quoting *Midwest Indus., Inc. v. Karavan*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc in relevant part)). Applying these principles, the Federal Circuit has held its own law applies to determinations of relevance for discovery purposes in a patent case. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987).

Comcast argues the withheld documents are relevant to its inequitable conduct counterclaim, which is based in part on Promptu's failure to disclose the Julia patent (U.S. Patent No. 6,513,063) to the United States Patent and Trademark Office (PTO) during prosecution of the applications for its own '196 and '538 patents. To prove inequitable conduct, the accused infringer must show the applicant "misrepresented or omitted material information with the specific intent to deceive the PTO." *Freshub, Inc. v. Amazon.com, Inc.*, 93 F.4th 1244, 1252 (Fed. Cir. 2024) (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011)). Intent to deceive may be "infer[red] from indirect and circumstantial evidence," though it must be "the single most reasonable inference able to be drawn from the evidence." *Therasense*, 649 F.3d at 1290 (citation omitted).

The final GPG report reflects the results of an infringement analysis for Promptu's AgileTV system. This analysis was based on a patent search conducted by Promptu's outside counsel, Michael Glenn of the Glenn Patent Group, and involved comparing claims from the issued patents and patent applications identified in the search to Promptu's system. *See* Ex. 16 at 20:16-24, 27:20-28:23, 213:20-214:2. The determinations regarding potential infringement were made in meetings between Glenn and Promptu employees Paul Cook and David Redell. *Id.* The final report assigned the issued patents and patent applications a priority level from 1 to 4, indicating "their relationship to the AgileTV system and service as then envisioned." Ex. 18 at TX-0230.0003. It identified the Julia patent as a "Priority 1" patent, meaning the "[t]ask accomplished is *arguably similar* to some aspect of the AgileTV system, but a *careful* reading of the independent claims shows that the technique(s) used by AgileTV are not covered by the patent." *Id.* at TX-0230.0003, .0011, 0025.[4]

[4] Although the final GPG report reflects the results of Promptu's infringement analysis, it does not discuss the patents and patent applications considered beyond assigning them a priority level. *See generally* Ex. 18. A separate document provided a compilation of the abstract and independent

Promptu argues drafts of the GPG report are irrelevant to the inequitable conduct counterclaim because the report concerns a noninfringement analysis for the Agile TV system, not a patentability analysis of the ’196 and ’538 patents and, as such, considered only whether the AgileTV system infringed others’ patents, not whether prior art would preclude Promptu’s patents. Nevertheless, the report reflects Promptu’s evaluation of the Julia patent and its similarity to the AgileTV system during the period when the applications for the ’196 and ’538 patents—which sought to patent technology in the AgileTV system, Ex. 16 at 25:5-15—were pending. The analysis was undertaken by the attorney who prosecuted the ’196 and ’538 patent applications and who was responsible for determining what constituted prior art for those applications. *Id.* at 26:24-27:19. While the analysis focused only on potential infringement by the AgileTV system, *id.* at 21:21-22:1, relevance is not limited to information that “can directly prove or disprove a claim,” *Gutierrez v. Baldwin*, No. 18-1478, 2022 WL 1658782, at *2 (S.D. Ill. May 25, 2022). Because Promptu’s knowledge regarding the Julia patent during the relevant timeframe may bear on the issue of intent, the withheld GPG materials are relevant under the liberal Rule 26 standard.

**B. Adequacy of Promptu’s Revised Privilege Log**

Having withheld the GPG materials as privileged, Promptu “bears the burden of proving the privilege applies.” *Enslin v. The Coca-Cola Co.*, No. 14-6476, 2016 WL 7013511, at *1 n.3 (E.D. Pa. June 24, 2016) (citing *In re Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979)). Rule 26 states when withholding otherwise discoverable information based on a claim of privilege, a party must “expressly make the claim” and “describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner

claims of each of the more than 30 patents identified as Priority 1, including Julia. *See* ECF No. 444-15.

that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The Rule itself "does not attempt to define for each case what information must be provided when a party asserts a claim of privilege." Fed. R. Civ. P. 26, advisory committee note to 1993 amendment. But in general, a privilege log must "set[] forth facts that, if credited, would suffice to establish each element of the privilege . . . claimed"—here that the document is "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Joy Global, Inc.*, No. 01-39, 2008 WL 2435552, at *4-5 (D. Del. June 16, 2008) (citations omitted). In this case, the parties entered into a stipulated protective order, approved by the Court, in which they agreed to provide, for all documents withheld on the basis of privilege, privilege logs that "comply with the legal requirements under federal law, but at a minimum will include" the document's date, author, recipient(s) (where reasonably ascertainable), a description of why privilege is being asserted over the document, and the type of privilege being asserted. ECF No. 127 at 18-19.

Comcast argues the privilege log entries for drafts of GPG report are insufficient because they do not adequately identify either the author or recipient of the drafts. Instead, with two exceptions,[5] the entries list "Glenn Patent Group" as the author and "File" as the recipient, which Comcast maintains "conceals who actually authored the materials, and whether they were created by attorneys or non-attorneys, possessed or reviewed by Promptu personnel, and circulated internally or transmitted electronically." Defs.' Mot. Compel. 8-9, ECF No. 669.

In its response to the motion to compel, Promptu explains it listed the Glenn Patent Group as the author of the draft reports because the documents originated from the Glenn Patent Group,

[5] *See* Ex. 25 at 21-22 (entries 1692 and 1693 listing "Joe Weatherbee" and "David Redell" in the "Author(s)" field and "File" as the recipient).

and listed "File" as the recipient because the documents were stored within Promptu's files. Pl.'s Opp'n 10, ECF No. 673. Promptu argues the log entries for the draft reports adequately support its claim of privilege in light of the description provided, which characterizes the documents as "[c]onfidential draft[s] reflecting attorney client communication where attorney responsible for patent prosecution matters provided legal analysis requested by client relating to patent landscape in connection with GPG Reports prepared in due diligence for potential agreement with Comcast." *See generally* Ex. 25 at 2-57 ("Description" column). Although the description does not identify the attorney in question, Promptu maintains the attorney undisputedly is Michael Glenn, whom Promptu's Rule 30(b)(6) witness David Redell identified as the attorney who conducted the patent search and "the only attorney at Glenn Patent Group that [Promptu] worked with."[6] Ex. 16 at 20:9-20, 27:6-19. As to the recipient information, Promptu maintains that "File" is a sufficient recipient given that discovery confirmed that Paul Cook and David Redell were the only individuals at Promptu who were involved in the infringement analysis.

The failure to identify a specific individual as the author or recipient of a communication, "in and of itself, does not vitiate the[] assertion of the attorney-client privilege," though it will subject the privilege claim to "close judicial scrutiny." *Schwartz Pharma., Inc. v. Teva Pharms. USA, Inc.*, No. 01-4995, 2007 WL 2892744, at *3 (D.N.J. Sep. 27, 2007) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Pa. 2005)). Applying such scrutiny, the Court agrees Promptu's identification of the Glenn Patent Group as the author of the drafts is sufficient. The Glenn Patent Group is the law firm where the attorney who conducted the patent

---

[6] While Mr. Glenn is not mentioned by name in the log entries for drafts of the GPG report, he is identified as the "attorney responsible for patent prosecution matters" in other log entries. Ex. 25 at 2 (entry 1603), 57 (entry 2233).

search (Michael Glenn) worked, *see* Ex. 16 at 20:16-20, 27:6-19, and the log establishes that the drafts reflect Mr. Glenn's legal analysis as requested by Promptu, *see generally* Ex. 25 at 2-57 ("Description" column). Although the log does not specifically identify the individual at the Glenn Patent Group who prepared the drafts, the identification of the law firm is sufficient in light of the description of the documents, which provides a clear nexus to an identifiable attorney (Mr. Glenn). *See Schwartz Pharma., Inc.*, 2007 WL 2892744, at *3 (noting "a document need not be authored by an attorney in order to be proper[l]y withheld on attorney-client privilege grounds" so long as there is "some nexus" between the author and an attorney); *cf. Fidelity & Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 523 (E.D. Pa. 1996) (requiring supplementation for log entries where no author is listed to "describe the content of the documents such that [defendants] and this Court may better assess the applicability of the privilege").

As to the recipient information, it is clear the recipient of the drafts was Promptu because the documents were stored in Promptu's files. The issue with privilege log entries that "provide[] only a general group-wide description for the recipients" is that the privilege may be waived "if the communications are disclosed to employees who did not need access to them." *SmithKline Beecham Corp.*, 232 F.R.D. at 476 (internal quotation marks and citation omitted); *see also Moffatt v. Wazana Bros. Int'l*, No. 14-1881, 2014 WL 5410201, at *2 (E.D. Pa. Oct. 24, 2014). Promptu argues there is no reason to believe such disclosure occurred here as deposition testimony confirmed that only Paul Cook and David Redell from Promptu were involved in the patent search process. As Promptu notes, Mr. Redell testified that he and Mr. Cook were involved in the meetings with Mr. Glenn in which determinations regarding infringement were made. He did not recall anyone else being involved in the due diligence process who would have known about the GPG report, though he did not investigate who at Promptu received the report or otherwise knew

about it. Ex. 16 at 30:17-31:10, 201:7-203:23. In *Occidental Chemical Corp. v. 21st Century Fox America, Inc.*, the case on which both parties primarily rely, the special master appointed to oversee discovery ruled that "File" would be a sufficient identifier for the recipient if the document was privileged on its face and there was evidence "File" was the actual recipient. No. 18-11273, 2022 WL 2805637, at *5 (D.N.J. July 18, 2022). While the description provided in the privilege log supports Promptu's claim that the drafts are privileged, particularly where there is no reason to believe the drafts were widely distributed, it is not clear whether "File" was the actual recipient or whether Promptu has information as to which employees possessed the drafts. The protective order requires Promptu to identify the recipients of privileged documents "where reasonably ascertainable." ECF No. 127 at 19. The Court will therefore direct Promptu to provide this information, if available.

**C. Waiver**

Comcast next argues Promptu has waived the privilege as to the withheld GPG materials by advancing an advice-of-counsel defense to the inequitable conduct counterclaim in its summary judgment briefing and presentation. "[A] party can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994); *see also In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006) ("Once a party announces it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived."). As the Third Circuit has explained,

> [a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

*Rhone-Poulenc*, 32 F.3d at 863; *accord EchoStar*, 448 F.3d at 1301 (recognizing waiver occurs "when a party defends its actions by disclosing an attorney-client communication").[7]

In its summary judgment briefing on the inequitable conduct issue, Promptu argued that based on the evidence in the summary judgment record, "no reasonable factfinder could find that any individuals withheld Julia with an intent to deceive the PTO." ECF No. 444 at 26. Promptu noted that "[f]or determining which references that Promptu needed to submit to the PTO for its pending applications, [it] depended on Mr. Glenn, who knew about Julia as the attorney that performed the search and assisted with analyzing infringement," citing Mr. Redell's deposition testimony to that effect. *Id.*; ECF No. 444-1 ¶ 89. Promptu further argued that having failed to ask Mr. Glenn at his deposition why Julia was not disclosed, Comcast has no evidence showing deceptive intent. ECF No. 444 at 26-27. Promptu also maintained its "reliance on its attorney to decide what to disclose to the PTO show[ed] that it was *not* intending to deceive the PTO." *Id.* at 26.

Comcast argues Promptu affirmatively placed Mr. Glenn's advice at issue by relying on his decision-making in support of summary judgment. But while Promptu may have identified Mr. Glenn as the responsible decision-maker, it did not attempt to defend against the inequitable conduct counterclaim "by disclosing or describing an attorney client communication" or by

[7] The parties rely in part on regional circuit law for the applicable legal standard for waiver of the privilege by assertion of an advice-of-counsel defense. Defs.' Mot. Compel 7, ECF No. 669; Pl.'s Opp'n 6, ECF No. 673. Although there is support for applying Federal Circuit law to this issue, *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 391-92 (W.D. Pa. 2005) (concluding Federal Circuit law governed the waiver issue in the context of an inequitable conduct claim); *see also EchoStar*, 448 F.3d at 1298 (applying Federal Circuit law to "questions of privilege and discoverability that arise from assertion of the advice-of-counsel defense" to a claim of willful infringement), the parties have not identified any differences in the relevant law of the Third and Federal Circuits. As both parties rely on *Rhone-Poulenc*, a leading Third Circuit case on the issue, in support of their respective positions, the Court will do the same.

"describing [Glenn's advice]" and asserting it "relied on that advice." *Rhone-Poulenc*, 32 F.3d at 863. The case law does not support a finding of waiver in these circumstances.

As Promptu notes, in each of the cases cited by Comcast in which waiver was found, the party asserting the privilege put its attorney's advice at issue by disclosing the contents of the advice. In *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, for example, the court found a waiver of the privilege based on deposition testimony from the plaintiff's in-house attorney that implicated an advice of counsel defense to an inequitable conduct claim. 227 F.R.D. 382, 396-97 (W.D. Pa. 2005). The testimony in question concerned a call with outside counsel in which the participants discussed prior art at issue in the inequitable conduct claim and the "legal thought process in deciding not to disclose" it. *See id.* On this basis—that the deposition testimony "clearly put in issue Plaintiff's attorneys' understanding of its applicable duty of disclosure with regard to material prior art and the role which attorney-client communications and advice of counsel played in the decision not to disclose certain prior art"—the court found the plaintiff had "waived the attorney-client privilege with regard to such communications about the disclosure of material prior art to the [PTO]." *Id.* at 397. Similarly, in *Pall Corp. v. Cuno Inc.*, the court found a waiver where, in an effort to rebut the defendant's assertions of inequitable conduct, the defendant offered a declaration in which its primary patent prosecution counsel "repeatedly offer[ed] his thoughts, mental impressions, opinions and conclusions as evidence of [plaintiff's] good faith during its appearance before the PTO." 268 F.R.D. 167, 169 (E.D.N.Y. 2010).[8]

[8] The other cases cited by Comcast found waivers based on similar disclosures of counsel's advice. *See EchoStar*, 448 F.3d at 1297, 1299 (finding defendant waived the privilege by asserting the defense of reliance on advice of counsel in response to willful infringement claim and relying on "an in-house investigation supervised by in-house counsel"; in the district court, defendant stated it would "rely on the non-infringement conclusions reached . . . by its in-house counsel" and would have counsel "testify regarding his infringement investigation and the opinions he derived therefrom," *TiVo Inc. v. EchoStar Commc'ns Corp.*, No. 2:04CV1, 2005 WL 4131649, at *1 (E.D.

Here, in contrast, Promptu argued only that it depended on Mr. Glenn to determine which references it needed to submit to the PTO for its pending patent applications. ECF No. 444 at 26. It has never disclosed the contents of his advice (if any). As such, there has been no waiver.

**D. Crime-Fraud**

Finally, Comcast argues disclosure of the withheld GPG materials is warranted under the crime-fraud exception to the attorney-client privilege. A party seeking the "extreme remedy" of piercing the privilege based on this exception "must demonstrate that there is a reasonable basis to suspect (1) that the privilege holder was committing or intending to commit a fraud or crime, and (2) that the attorney-client communication . . . was used in furtherance of that alleged crime or fraud." *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 06-1797, 2014 WL 80563, at *2 (E.D. Pa. Jan. 9, 2014) (first quoting *Unigene Lab'ys, Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1359 (Fed. Cir. 2011); then quoting *In re Grand Jury*, 705 F.3d 133, 155 (3d Cir. 2023)); *accord Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1329 (Fed. Cir. 2011).[9]

To satisfy the first element of the exception in the patent context, the movant "must establish . . . common law fraud." *Unigene*, 655 F.3d at 1358; *see also King Drug Co.*, 2014 WL 80563, at *3. A finding of common law fraud "must be based on independent and clear evidence

Tex. Sept. 26, 2005)); *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 470 (E.D. Mich. 2008) (finding waiver where defendant "affirmatively asserted advice of counsel as a basis for its good faith" by submitting an affidavit stating its classification decision was based on "ongoing consultation with counsel," who "confirmed [defendant's] understanding of the regulations"); *UUSI, LLC v. United States*, 121 Fed. Cl. 218, 225-26, 229 (Fed. Cl. 2015) (finding waiver where third-party defendant placed communications between its predecessor and outside patent counsel regarding the merits of patent infringement claims at issue by describing the communications in an affidavit supporting its motion for summary judgment; affidavit disclosed the substance of counsel's advice).

[9] Federal Circuit law governs application of the crime-fraud exception to the attorney-client privilege. *Unigene*, 655 F.3d at 1358.

of deceptive intent together with a clear showing of reliance." *Unigene*, 655 F.3d at 1358-59 (quoting *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000)). "Such independent and clear evidence must establish a prima facie case of fraud," which generally requires showing:

> (1) a representation of material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the part deceived as a result of his reliance on the misrepresentation.

*Id.* at 1359 (quoting *Spalding*, 203 F.3d at 807).

To establish the "in furtherance" element, the movant must "show that a given communication was 'meant to facilitate *future* wrongdoing by the client.'" *King Drug Co.*, 2014 WL 80563, at *4 (emphasis in original) (quoting *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 90 (3d Cir. 1992)). "Evidence tending only to show that a communication 'relates to' or would provide 'relevant evidence' of fraudulent conduct is insufficient." *Id.* (quoting *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995)).

Comcast argues it has made a prima facie showing that Promptu committed fraud by withholding the Julia patent from the PTO during prosecution of the '196 and '538 patents. "[F]or an omission such as a failure to cite a piece of prior art to support a finding of . . . fraud, the withholding of the reference must show evidence of fraudulent intent. A mere failure to cite a reference to the PTO will not suffice." *Spalding*, 203 F.3d at 807 (citation omitted). Comcast argues it has made a prima facie showing of deceptive intent based on evidence that Promptu had ties to the inventor and assignee of the Julia patent, licensed the application that later issued as the Julia patent and regarded it as "fundamental" to Promptu's work, identified the patent in a prior art search for patents that Promptu's AgileTV system might infringe and assigned it "Priority 1,"

meaning the "[t]ask accomplished" by Julia was "arguably similar to some aspect of the AgileTV system" (but finding no infringement), but did not disclose the Julia patent to the PTO, despite understanding its obligation to disclose relevant prior art to the PTO. *See* Defs.' Mot. Compel 13, ECF No. 669.

In arguing otherwise, Promptu relies primarily on *Spalding*, in which the Federal Circuit, on mandamus review, reversed a lower court's order compelling disclosure of an invention record over a claim of privilege. 203 F.3d at 802, 808. The appellate court described the invention record as a short form document "for inventors to disclose to the corporation's patent attorneys that an invention has been made and to initiate patent action," as well as to provide information about the invention, including the "closest prior art." *Id.* at 802 n.2. In granting the defendant's motion to compel, the lower court found the invention record was not privileged and was discoverable under the crime-fraud exception in any event because the defendant "had shown that a material misrepresentation may have been made to the PTO, which resulted in issuance of the patent at issue." *Id.* at 802-03 (internal quotation marks and citation omitted). The basis for the material misrepresentation claim was that the plaintiff omitted from the patent application submitted to the PTO prior art included in the invention record. *Id.* at 807. The Federal Circuit held the "mere allegation" of the plaintiff's "failure to cite a reference to the PTO" was insufficient for a prima facie showing of fraud, explaining:

> In actuality, a citation of prior art in an invention record in the absence of evidence of a purpose to conceal that art would seem to be the opposite of furthering fraud; it informs the patent attorney or agent of the closest prior art. What the attorney then does with that information is another matter, but inclusion of the closest prior art in an invention record does not alone provide evidence of furthering a fraud. Because [defendant] failed to provide any evidence of fraudulent intent, we conclude that the crime-fraud exception does not apply . . . .

*Id.* at 808.

Comcast argues the evidence of Promptu's deep familiarity with Julia patent, which it licensed for use in the AgileTV system and carefully reviewed as part of its infringement analysis for the system, distinguish this case from *Spalding* and "strongly suggests an intentional omission." Defs.' Reply 6, ECF No. 680. Certainly, the evidence in this case reflects closer scrutiny of the Julia patent by Promptu and its counsel than in *Spalding*, where the undisclosed prior art was merely mentioned in an invention record provided to the patentee's corporate legal department and there was no evidence as to what the attorneys "then d[id] with that information." *Spalding*, 203 F.3d at 808. But Comcast does not explain why this analysis—which concluded that although the task accomplished by Julia was "*arguably similar* to some aspect of the AgileTV system, . . . the technique(s) used by AgileTV are not covered by the patent," Ex. 18 at TX-0230.0003—would have led Promptu and its counsel to believe Julia was within the duty to disclose. As such, Comcast has not made a sufficient showing of deceptive intent.

Nor has Comcast made the required prima facie showing that the withheld GPG materials were used in furtherance of Promptu's alleged fraud on the PTO. Comcast argues the existence of multiple drafts and communications about those drafts, together with Promptu's failure to disclose the Julia patent to the PTO despite having identified it as "Priority 1," "give[] rise to an inference that Promptu and its counsel actively reviewed, revised, and deliberated over how highly relevant prior art, including the Julia patent, should be characterized and handled during prosecution," culminating in a decision not to disclose. Defs.' Mot. Compel. 14, ECF No. 669. The Court disagrees.

The drafts contain Mr. Glenn's legal analysis "in connection with [the] GPG Reports prepared in due diligence for [a] potential agreement with Comcast"—i.e., Promptu's infringement analysis for the AgileTV system. *See generally* Ex. 25 at 2-57 ("Description" column). The

existence of multiple drafts and communications about those drafts suggests Promptu and its counsel actively evaluated the patents identified in Mr. Glenn's search, including Julia, and whether claims of those patents were potentially infringed by the AgileTV system. But the suggestion that the drafts and related communications reflect deliberation over how the patents "should be characterized and handled" vis-à-vis the PTO is speculation, particularly in light of Mr. Redell's testimony that determining the relationship of existing patents to Promptu's patent applications was not part of the process that led to the preparation of the GPG report. Ex. 16 at 26:3-22. "[T]he crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of . . . fraud." *Roe*, 68 F.3d at 40. Instead, there must a reasonable basis to believe that the particular attorney-client communications at issue were themselves in furtherance of fraud. *Id.* Because Comcast has not provided a reasonable basis to suspect that the withheld GPG materials concerning Promptu's infringement analysis were used to further an alleged fraud on the PTO, this element is not satisfied. Nor is the standard for *in camera* review satisfied here. *See In re Chevron Corp.*, 633 F.3d 153, 167 (3d Cir. 2011) (holding *in camera* review must be supported by "a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies" (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989)).

**CONCLUSION**

For the reasons set forth above, the motion to compel will be denied, except that the Court will direct Promptu to provide Comcast with additional information about the actual recipients of the drafts of the GPG report if such information is available. An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.